UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEVE MURRAY,<br><br>  Plaintiff<br><br>v.<br><br>KENNETH WILLIAMS, et al.,<br><br>  Defendants | Case No.: 3:25-cv-00123-MMD-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 10, 11 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's emergency motion for temporary restraining order (TRO) and/or preliminary injunction. (ECF Nos. 10, 11.)[1] Defendants filed a response. (ECF Nos. 16, 19-1.) Plaintiff filed a reply. (ECF No. 23.) The court held a hearing on the motion on July 2, 2025, where Nurse Christy Coss was present telephonically (ECF No. 26), and issues this Report and Recommendation to deny Plaintiff's motion for injunctive relief.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) The court screened Plaintiff's complaint and allowed him to proceed with Eighth Amendment deliberate indifference to serious medical needs claims against Dr. Benson, Dr. Voss, Dr. Bijjula, Dr. Williams, Director of Nursing (DON) Lucas, DON Isaacson, Brendal, John Doe 1 (when

---

[1] ECF Nos. 10 and 11 are identical.

Plaintiff learns his or her identity), Medekith, Kris, and John Doe 2 (when Plaintiff learns his or her identity).

Plaintiff alleges that he suffers from two types of blood cancer and needs to have his platelet count tested regularly because his cancer treatments can cause his platelet count to increase to extremely high levels that could cause a heart attack or death. He claims Dr. Benson, Dr. Voss and Dr. Bijjula were responsible for his treatment, and failed to implement procedures to ensure his platelet count would not spike to dangerous levels, and when it did so, they did not provide treatment to reduce his platelet count. Plaintiff filed medical request forms (known as "kites") and grievances notifying Dr. Williams, DON Lucas, and DON Isaacson about these issues, but they failed to order that he receive treatment, despite having the authority to do so. As a result, Plaintiff continued to suffer from dangerously high platelet counts.

Plaintiff further alleges that on June 19, 2024, he had a very high platelet count and also suffered from carbon monoxide poisoning. He sought to "man down" and file an emergency grievance to get medical attention, but Brendal denied his request to "man down" and John Doe 1 denied his emergency grievance. As a result, Plaintiff did not receive medical treatment.

Next, Plaintiff avers that he was prescribed medication to reduce the pain he was in from his cancer, but without reason, John Doe 2 stopped the prescription for 56 days, and Plaintiff experienced severe pain during that time.

Plaintiff asserts that Medekith and Kris were notified that Plaintiff's blood showed dangerously high platelet levels, and knew Plaintiff could suffer a heart attack or stroke as a result. Neither took any immediate action to ensure he received treatment, and only told Plaintiff he would be scheduled to see a doctor at a later date.

Finally, Plaintiff alleges that he is 27 pounds underweight. A medical professional prescribed Boost to Plaintiff to help him maintain his weight; however, Dr. Williams instituted a policy prohibiting prescription protein drinks for inmates unless they have a BMI below 17 percent. As a result, Plaintiff stopped receiving Boost, which caused his health to suffer.

Plaintiff's emergency motion for injunctive relief, Plaintiff claims that his platelet levels have only been in the "safe range" for one week since February 8, 2024, and his red blood cell count has been below the minimum safe level on at least eight occasions. He claims this indicates his cancer is progressing. He asserts that his chemotherapy has not been increased since April 24, 2024, and he has not had a phlebotomy (which he asserts would temporarily correct his blood problems) since May 3, 2024. He argues that this has failed to keep his cancer in remission, and puts him at risk of death. As such, he requests that the court order Defendants to: (1) promptly schedule an appointment with an oncologist; and (2) perform regular phlebotomies until his cancer returns to remission.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of

federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

### III. DISCUSSION

Plaintiff's motion requests two forms of relief: an appointment with the oncologist and regular phlebotomies. (ECF No. 10 at 8:8-11.) Plaintiff's motion should be denied as moot insofar as he requests a prompt appointment with the oncologist, as it was confirmed at the hearing that he saw the oncologist—Dr. Bijjula—in May 2025, and Nurse Coss represented that he was being scheduled for a follow up appointment this month (July 2025).

At the hearing, Plaintiff raised the issue that at the May 2025 appointment, Dr. Bijjula ordered that his chemotherapy treatment be increased by 5 mg, and that had not yet occurred. Nurse Coss represented that NDOC had only just received Dr. Bijjula's treatment notes and orders, and that the chemotherapy drug was promptly ordered from a specialty pharmacy (as the ordered dose was not available through the regular pharmacy) and was being overnighted to NNCC for Plaintiff. Nurse Coss assured the court that it would relay to Dr. Bijjula's office the importance of promptly transmitting his treatment notes and orders for implementation by NDOC.

Plaintiff raised the issue for the first time in his reply brief and at the hearing that his lab results (he is currently having labs done every other week) are not being promptly sent to Dr. Bijjula. Dr. Bijjula's treatment notes do reflect that he discussed with Plaintiff that they needed proper coordination from the prison regarding critical lab results. (*See* ECF No. 19-1 at 32-38, 64-69, 74-80.) The request for an order for prompt transmission of the lab results was not part of the injunctive relief sought in Plaintiff's motion so this request should be denied. However, Nurse Coss assured the court that going forward, Plaintiff's lab results would be promptly sent to Dr. Bijjula so he can make any determinations regarding medication adjustment.[2]

Insofar as Plaintiff requests injunctive relief in the form of regular phlebotomies, this has not been ordered by his oncologist, and presents a difference of opinion between the course of

---

[2] The court expressed to Nurse Coss and defense counsel that this should occur within a reasonable time after the results are received by NDOC and not just right before Plaintiff's appointments with Dr. Bijjula, which can occur weeks or even months after the lab results, which would seemingly negate the oncologist's ability to manage Plaintiff's medication.

6

treatment chosen by his specialist and the course of treatment Plaintiff believes he should be receiving.

Under the Eighth Amendment, to establish deliberate indifference to a serious medical need in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow v. McDaniel*, 681 F.3d 967, 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled on other grounds by Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014)).

Plaintiff's medical records show that when he saw Dr. Bijjula in February 2024, the doctor noted that his hematocrit was below 42, and at that point Plaintiff would not benefit from phlebotomy, but this would continue to be monitored. (ECF No. 19-1 at 117-120.) A phlebotomy was subsequently ordered in April 2024, when Plaintiff's hematocrit was greater than 45. (ECF No. 19-1 at 7, 27, 110-114.) There was no subsequent discussion or order for additional phlebotomy.

While Plaintiff claims that phlebotomy can temporarily correct his blood condition, he provides no evidence to support this statement, evidence to show that additional phlebotomies were medically indicated, or that the decision not to provide additional phlebotomies was medically unacceptable under the circumstances or done in conscious disregard to a risk to Plaintiff's health. Nor is there any evidence to support Plaintiff's claim that his cancer has progressed as a result of the failure to provide phlebotomies. As such, this aspect of Plaintiff's motion for injunctive relief should also be denied.

Finally, Plaintiff raised for the first time in his reply and at the hearing that he wants an order that his prescription for Boost and analgesics be reinstated. It is inappropriate to raise an issue for the first time in a reply brief, as this deprives the opposing party the opportunity to review, research and address the issue or argument in the response to a motion. *See Cedano-Viera v. Ashcroft,* 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (citing *Thompson v. Commissioner,* 631 F.2d 642, 649 (9th Cir. 1980)); *Bazuye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). In any event, Nurse Coss represented she was unaware of such an order, but that she would review his records and determine whether this was the case. The court cautioned defense counsel that if it turns out that NDOC medical personnel are ignoring the orders of Plaintiff's oncologist, that news would not be favorably received by the court. As this relief was not properly requested in Plaintiff's motion, such relief should nevertheless be denied.[3]

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for injunctive relief (ECF Nos. 10-11).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for

---

[3] The court encourages the parties to attempt to resolve this issue without the court's intervention and without the need to file another motion for injunctive relief as it does appear from Defendants' own exhibits that Plaintiff's oncologist previously ordered, and NDOC medical providers confirmed, Plaintiff was to increase his nutritional supplements with Ensure and later Boost, on a daily basis. (ECF No. 19-1 at 20, 21, 23, 64-69, 74-80, 82-89, 125.)

consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

    2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 10, 2025

                                                                Craig S. Denney
                                                                 United States Magistrate Judge