**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STEVE MURRAY,

    Plaintiff

v.

KENNETH WILLIAMS, et al.,

    Defendants

Case No.: 3:25-cv-00123-MMD-CSD

**Order**

Re: ECF Nos. 75, 76

Plaintiff has filed a second emergency motion for temporary restraining order and preliminary injunction. (ECF Nos. 75, 76.) Defendants filed a response. (ECF Nos. 79, 81-1 to 81-6, 83, 85-1 to 85-6.) Plaintiff filed a reply. (ECF No. 88.)

Plaintiff is proceeding with Eighth Amendment deliberate indifference to serious medical needs claims in this action concerning treatment related to his blood cancers. In his second emergency motion, Plaintiff seeks an order granting him the following relief: (1) schedule him to be seen by a qualified physician/oncologist immediately; (2) perform weekly phlebotomies as ordered by Plaintiff's oncologist to determine Plaintiff's platelet count; (3) provide him with Boost or Ensure or an equivalent nutritional supplement, as ordered by his oncologist; (4) provide Plaintiff with Baclofen or an equivalent medication for management of his chronic pain; and (5) schedule Plaintiff to see a physician to determine a diagnosis and provide treatment of an enlarged growth/tumor in his lower right abdomen.

The court will schedule a hearing on Plaintiff's motion and will require a medical provider at Northern Nevada Correctional Center (NNCC) with knowledge of Plaintiff's medical condition and treatment to be present by video for the hearing.

In addition, the court will require Defendants to provide supplemental briefing addressing the following topics:

**(1) The Status of Scheduling Plaintiff with a New Hematologist/Oncologist**

Plaintiff last saw his oncologist, Dr. Bijjula, on January 6, 2026. On February 4, 2026, APRN Villegas requested a follow up visit with the oncologist. (ECF No. 85-1 at 4.)

On March 5, 2026, Dr. Bijjula sent Plaintiff a letter severing the physician-patient relationship. (ECF No. 77 at 90; ECF No. 85-2 at 2.) This is likely because Plaintiff has named Dr. Bijjula as a defendant in this lawsuit.

On March 23, 2026, Plaintiff saw APRN Villegas, and Villegas requested a follow up appointment with a hematologist/oncologist on an *urgent* basis due to Plaintiff's "worsening condition." Plaintiff indicated to APRN Villegas at that time that he could see Dr. Tay at St. Mary's in Reno. The request for a follow up was authorized on April 1, 2026. (ECF No. 85-1 at 2.)

On April 19, 2026, Plaintiff sent an inmate request form (known as a "kite") asking if he had been scheduled with an oncologist. He was told his referral was being processed by the Utilization Review Panel (URP), and Plaintiff would be scheduled if the request was approved. (ECF No. 85-4 at 11.) This response ignores the fact that the request had already been approved for weeks at this point.

Defendants' response to Plaintiff's motion states that NDOC medical staff are working to find an oncologist who will see Plaintiff. (ECF No. 79 at 3:14-15.)

In their supplemental brief, Defendants shall include a declaration from a medical provider at NNCC with personal knowledge regarding what efforts have been undertaken to schedule Plaintiff with a new hematologist/oncologist since that request was approved on April

1, 2026; whether Plaintiff has been scheduled with a new hematologist/oncologist at this point, and if not, why not.

**(2) Weekly Blood Draws/Lab Testing**

Plaintiff's motion refers to weekly "phlebotomies," and Defendants' response argues that phlebotomies are not indicated. Reading Plaintiff's motion as well as his medical records, it appears that Plaintiff's motion refers to phlebotomy, as that term is used to mean taking blood for a laboratory test (*i.e.*, to find out an individual's red blood cell count, white blood cell count, or platelet levels), as opposed to therapeutic phlebotomy, which involves removing blood as part of the treatment for some blood cancers.[1]

At his last appointment with Plaintiff on January 6, 2026, Dr. Bijjula included an order to continue *weekly* labs for close monitoring. (ECF No. 85-1 at 8.) APRN Villegas' order dated February 3, 2026, also indicates *weekly* labs should be occurring, including CBC (Complete Blood Count) and CMP (Comprehensive Metabolic Panel). (ECF No. 85-5 at 4.)

Plaintiff provides lab records for most of 2025 with his motion, indicating he does not have his more recent records.[2] Defendants' motion does not address Plaintiff's argument that he is not getting weekly blood draws to monitor his blood count and platelet levels. Nor do they dispute that this monitoring is critical to treatment of his blood cancers or that his cancer medications may need adjustment based on his lab results. Their response does acknowledge that Dr. Bijjula ordered weekly labs for close monitoring at the last appointment. (ECF No. 79 at 2:17-18.)

---

[1] What Is Therapeutic Phlebotomy?, last visited June 30, 2026.

[2] Plaintiff should send a kite to the warden to review his most recent medical records, and the Attorney General's Office shall ensure Plaintiff is provided a reasonable opportunity to review his records.

Defendants' supplemental brief shall address whether Plaintiff has been receiving weekly blood draws and laboratory testing, including CBC and CMP, since Dr. Bijjula and APRN Villegas ordered the same in January and February 2026, and if not, why not.

**(3) Boost or Ensure Nutritional Supplement**

Plaintiff's medical records document that he has been prescribed Boost nutritional supplement to be taken three times a day for moderate protein caloric malnutrition. (ECF No. 88 at 21; ECF No. 85-5 at 13, 15; ECF No. 85-1 at 39-41.) When Dr. Bijjula last saw Plaintiff on January 1, 2026, he included an order for Boost, the end date is left blank, and there is a noted expiration date of January 6, 2027. (ECF No. 85-1 at 8, 10, 14.)

Defendants response acknowledges that Dr. Bijjula prescribed Boost for Plaintiff at the last appointment. (ECF No. 79 at 2:19-20.) Defendants argue, however, that the prescription was last filled in February for one month, and has since expired, and Plaintiff will have to have the prescription renewed by a provider to continue receiving Boost.

In their supplemental reply brief, Defendants shall address why the Boost supplement was discontinued after one month, when Dr. Bijjula's order does not contain a month-long expiration date. Defendants shall also address whether Plaintiff has submitted a kite requesting Boost since the asserted expiration of the order, or whether he requested that the supplement be renewed at a medical appointment since that time. In addition, if Plaintiff has not sent a kite requesting that the Boost order be renewed since its asserted expiration in early March of 2026, he should do so and the parties shall be prepared to address at the hearing whether the supplement has been renewed.

///

///

4

**(4) Baclofen for Pain**

It is undisputed that Plaintiff has consistently complained of joint pain and that NDOC medical providers have attributed his pain to his myelofibrosis. Dr. Bijjula recommended that Plaintiff be referred to pain management and for a consultation with a rheumatologist as far back as September 2025. Plaintiff was referred for the rheumatology consultation, but is not clear whether he ever saw a rheumatologist as there are no rheumatology records before the court. Nor does it appear Plaintiff was ever referred out for pain management.

Plaintiff has been given Tylenol, Naproxen, and Tramadol for his pain. Most recently, on March 23, 2026, APRN Villegas increased Plaintiff's Tramadol dose to see if it would give him any functional relief, and also ordered Baclofen, as Plaintiff reported it had helped him in the past. (ECF Nos. 85-3 at 5-6, 85-5 at 5.) It appears Baclofen was administered between March 24, 2026, and March 31, 2026. (ECF No. 85-3 at 3.)

Plaintiff claims that Dr. Williams denied Plaintiff's Baclofen prescription after 7 days, and nothing has been prescribed in its place.

Defendants do not address why the Baclofen order was stopped, or whether Plaintiff has been prescribed another medication to manage his pain in its place.

In their supplemental brief, Defendants shall address why the Baclofen prescription was stopped, and whether another medication to manage Plaintiff's pain has been prescribed in its place. They shall also address whether Plaintiff ever saw a rheumatologist, and whether Dr. Bijjula's recommendation that Plaintiff be referred to pain management was addressed, and if not, why not.

///

///

**CONCLUSION**

The court will set a hearing on Plaintiff's second emergency motion for injunctive relief in a separate order.

On or before **July 14, 2026**, Defendants shall file and serve a supplemental brief addressing the topics outlined above.

**IT IS SO ORDERED**.

Dated: June 30, 2026

_____
Craig S. Denney
United States Magistrate Judge